IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MERCK SHARP & DOHME LLC,** | * |
| Plaintiff, | * |
| v. | *   Civil Case No.: 22-3059-JRR |
| **THE JOHNS HOPKINS UNIVERSITY,** | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The court has before it Plaintiff Merck Sharp & Dohme LLC's Motion to Stay Pending the U.S. Patent Office's *Inter Partes* Review Proceeding (the "Motion"), Defendant The Johns Hopkins University's opposition to same, as well as Plaintiff's reply. (ECF Nos. 116, 124, 125.) The court has reviewed the parties' submissions; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.     INTRODUCTION**

There is no dispute that the court has authority to stay this action pending the decision of the United States Patent Office's Patent Trial and Appeal Board ("PTAB") following its *inter partes* review ("IPR") of JHU's U.S. Patent No. 11,591,393 (the "'393 patent") as set forth in its decision at IPR2024-00240.[1] (Motion at Ex. A-1, ECF No. 116-3.) Importantly, the PTAB's final IPR determination as to the '393 patent is due by June 13, 2025 (subject to a maximum 6-month extension for "good cause"). 35 U.S.C. § 316(a)(11).

---

[1] For efficiency, the court will not recite here the procedural backdrop to the Motion except where necessary to address the parties' disputes relevant to the factors the court assesses in determining whether to grant or deny the Motion.

The court assesses the Motion based on the following non-exhaustive factors: (1) stage of the proceedings; (2) whether a stay would simplify trial and other issues before the court; and (3) whether a stay would unduly prejudice JHU as the non-movant.

## II.  ANALYSIS

### A. Stage of the Proceedings

With respect to the stage of the proceedings,[2] although Merck's initial brief rather understates the extent of discovery the parties have engaged in, discovery does not close until August 15, 2024 (two months following the filing of the Motion); no depositions had been taken (although at least one was scheduled to take place and the parties had been in communications about setting a deposition schedule); the parties are in the throes of paper discovery and document exchange – with each party expecting and demanding continuing production by the other;[3] expert witnesses have been disclosed, although reports have not been exchanged and are not due until September 16, 2024; the claim construction hearing was more than two months away (August 20, 2024) (and is, as of this writing, seven weeks away), although the parties have completed briefing; dispositive motions are due January 2, 2025; and no trial date has been set.

The court is persuaded that the proceedings are in the relatively earlier stage, which is not to say the parties have not invested time and attention to developing the record and evidence for the *Markman* hearing and trial, but rather that resources have not been spent on the majority of pretrial events.  No depositions had been taken as of the filing of the Motion, paper discovery is far from complete (according to the parties' respective positions as to what has been produced and what remains outstanding – indeed, discovery disputes exist and have been outlined by the parties

---

[2] The court considers the above-identified stay factors as of the time the Motion was filed – June 14, 2024.
[3] By order issued June 21, 2024, United States Magistrate Judge Aslan granted Merck's motion for protective order (to stay discovery pending this court's ruling on the Motion).  (ECF No. 123.)

2

for consideration by Judge Aslan, who has stayed discovery pending the instant opinion and order), the *Markman* hearing is nearly two months away, no dispositive motions are pending, and trial is far from being scheduled (with many contingencies to bear for that to happen).  In summary, the court is persuaded the stage of the proceedings is sufficiently early that a stay pending IPR will be neither wasteful of, nor render meaningless, the parties efforts.  Indeed, while not dispositive, the parties are expected to make considerable use of what has been developed in discovery thus far before the PTAB at the IPR trial.

### B. Whether a Stay Would Simplify Trial and Other Issues Before the Court

The court is persuaded that a stay has a strong likelihood of simplifying and streamlining material issues before the court, including pre-trial and trial issues in contest – this is particularly so given the PTAB's finding that Merck presented a "compelling" challenge to the '393 patent, a finding reserved for challenges "in which the evidence, if unrebutted in trial, would plainly lead to a conclusion that one or more claims are unpatentable by a preponderance of the evidence." (Motion at Ex. A-5, ECF No. 116-7, Memorandum of United States Patent and Trademark Office ("USPTO") issued June 21, 2022, by USPTO Under Secretary of Commerce for Intellectual Property and Director of USPTO.)  And, although not determinative, the court appreciates that USPTO post-grant proceedings, including IPR, exist as a means of patent issuance quality control and to reduce the prospect of comparatively inefficient and expensive Article III litigation, and the concomitant burden on Article III courts. (Further, the court notes that the PTAB declined to stay IPR pending the outcome in this litigation.)  Finally, Merck has sought IPR of all patents at issue in the instant action; given the similarity of the patents and the common basis of Merck's IPR petitions (which JHU has expressly acknowledged before the PTAB), it is reasonable to expect that the PTAB will grant IPR of additional patents at issue before this court.  Depending on the

outcome of IPR – even if only as to the '393 patent – the matters before the court could be fundamentally altered. The prospect of duplication of efforts (by the parties and the court) and risk of inconsistent outcomes (in the absence of a stay) weighs heavily in favor of a stay.

JHU's contention that Merk's breach of contract action should proceed even if the court stays JHU's counterclaims pending the determination of the PTAB is unpersuasive. Merck's breach of contract claim and JHU's counterclaims are factually, and therefore evidentiarily, entwined. Even were it the case that the breach of contract claim could go forward without turning the counterclaims topsy-turvy, material inefficiency weighs in favor of keeping the parties' claims and counterclaims together as a single litigation unit – from the prospect of judicial resources, attorneys' fees and expenses, witness burden, and jury selection, time and attention.

### C.    Degree of Prejudice on JHU

Merck urges that because JHU is not a direct market competitor, it is a "non-practicing entity" seeking monetary relief only. The court agrees with JHU that this oversimplifies JHU's posture in the medical industry because while there is a "cloud" over these patents and questions linger as to whether it breached its contract with Merck, JHU's ability to fund research with patent license revenue is hamstrung. The court also notes, however, that JHU elected not to seek an audience with the court on alleged infringement until it was sued for breach of contract. The court intends no commentary whatsoever as to the merits of JHU's counterclaims, rather only to acknowledge that JHU did not independently pursue its claims with the urgency it now describes is at hand. Further, inasmuch as the PTAB is statutorily bound to issue its opinion on the '393 patent less than a year from now, the court is unpersuaded that JHU's licensure challenges pose undue prejudice. (Although litigation expense is typically not considered relevant in evaluating whether a stay would contribute to prejudice a party might suffer if litigation were suspended, to

the extent litigation expense is a relevant prejudice consideration, the court is not persuaded that a stay would impose undue prejudice due to the discovery efforts JHU has undertaken. *See Section II A, supra.*)

### D. Other Considerations: Merck's Litigation Strategy/Conduct and the PTAB Opinion on Merck's IPR Petition

The court notes here JHU's complaint that Merck has dragged its feet throughout discovery, including in scheduling depositions; JHU's expressed frustration and consternation that Merck, in JHU's view, has marshaled its litigation strategy to enable it to request the stay the court now considers; and, specifically, JHU's contention that Merck's pursuit of IPR was dilatory – essentially a slow roll to enhance the likelihood that it would prevail in a motion for stay of this case. Relatedly, JHU further urges that Merck chose this forum first and the court should require that Merck stick with it, and not countenance a stay in favor of Merck's drive to upend JHU's patents through IPR.

JHU also goes to great lengths in its opposition papers to explain its position that the PTAB "got it wrong" in its grant of IPR – specifically because, in JHU's view, the PTAB's construction of "in response to" is nonsensical and because both parties disavow (here) that "in response to" requires construction. (This last point, JHU urges, further demonstrates the dubious nature of Merck's intellectual honesty and candor before this tribunal, PTAB or both.)

At bottom, the court appreciates JHU's irritation about what it views as unsportsmanlike conduct (to put it mildly). While this court has not had a front row seat to the issues about which JHU complains (and discovery disputes have been referred to Magistrate Judge Aslan), none of these frustrations addresses or bears upon the key considerations material to the court's

determination of whether the posture of the case and the nature and scope of the PTAB's IPR of the '393 patent warrant a stay pending the PTAB's ruling.[4]

### III. CONCLUSION

For the reasons set forth herein, by separate order, the Motion is granted.

/S/

June 29, 2024

_____
Julie R. Rubin
United States District Judge

---

[4] Whether or not the court agrees with the PTAB in its opinion on Merck's IPR petition is of no moment and fails to consider the degree to which IPR will inform the core issues before the court; and, therefore, the risk of inconsistent outcomes should this court proceed notwithstanding parallel IPR, which will almost certainly conclude before trial in this case.